CHADBOURN, INC., A CORPORATION v. DANIEL KATZ AND BREVARD REALTY COMPANY, INC., A CORPORATION

No. 42

(Filed 10 October 1974)

1. **Rules of Civil Procedure § 4— jurisdiction over nonresident in another state — contract to convey property in this State**

   G.S. 1-75.4(6) provides that a court of this State having jurisdiction over the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) of the Rules of Civil Procedure if there is a claim arising out of a bargaining arrangement made with the defendant; there is a promise made anywhere which evidences the bargaining arrangement upon which suit is brought; and the subject matter of the arrangement is real property situated in this State.

2. **Process § 9; Rules of Civil Procedure § 4— jurisdiction of nonresident in another State — contract involving real property**

   In an action for breach of contract, G.S. 1-75.4(6) was applicable to give the trial court jurisdiction over the nonresident defendant where the contract in question revealed a promise by individual defendant to acquire and a promise by plaintiff to dispose of real property situated in this State and the complaint was grounded on that promise and alleged a tender of the deed and other documents specified in the contract and a failure of defendant to keep his promise.

3. **Constitutional Law § 24; Process § 9; Rules of Civil Procedure § 4— jurisdiction of nonresident in another state — no denial of due process**

   Assumption of *in personam* jurisdiction over defendant by the courts of this State does not offend traditional notions of fair play and substantial justice within the contemplation of the Due Process Clause of the Fourteenth Amendment, and defendant's contacts with the State are sufficient to satisfy due process requirements where the record shows that defendant entered into a contract to purchase real property situated in North Carolina, formed a corporation in

this State to receive title, and thus invoked the benefits and protection of its laws.

**4. Process § 9; Rules of Civil Procedure § 4— service by registered mail — compliance with due process**

Service upon defendant by registered mail apprised him of the pendency of the action against him and afforded him an opportunity to present his objections; therefore, such service complied with due process requirements.

Chief Justice BOBBITT not sitting.

ON *certiorari* to the Court of Appeals to review its decision, 21 N.C. App. 284, 204 S.E. 2d 201 (1974), upholding judgment of *Clarkson, J.*, 22 October 1973 Session, MECKLENBURG Superior Court.

Chadbourn, Inc., is a North Carolina corporation. Defendant Daniel Katz is a citizen and resident of New York. Brevard Realty Company, Inc., is a North Carolina corporation.

Chadbourn, Inc., and Daniel Katz duly executed a written contract by the terms of which Chadbourn agreed to sell and Katz agreed to buy several tracts of real property in Charlotte, North Carolina, for $350,000.00, with a $25,000.00 down payment and $112,000.00 in cash payable on closing date, and the balance of $213,000.00 to be evidenced by a promissory note secured by a purchase money deed of trust. Daniel Katz allegedly breached that contract and plaintiff brought this action alleging two claims for relief. The first claim seeks specific performance while the second claim, in the event specific performance is not decreed, seeks recovery of damages in the sum of $135,000.00 for broker's fees, attorney's fees, alterations to the premises, and loss of benefit of the bargain. The complaint alleges that prior to the date of closing specified in the contract Daniel Katz informed Chadbourn, Inc. that he had caused Brevard Realty Company, Inc. to be organized to take title to the property, stating that the contract in question had been assigned to Brevard Realty Company, Inc. and Chadbourn should make its conveyance of the property in question to Brevard Realty Company, Inc.

Chadbourn alleges that at the time stipulated in the contract for closing the sale it had complied with all the requirements of the contract and tendered to the defendants a deed to the property together with other documents required by the contract. Chadbourn further alleges that defendant Daniel Katz refused

to accept the tender, pay the the cash portion of the purchase price and deliver the promissory note for $213,000.00 secured by a purchase money deed of trust. Plaintiff brought this action for specific performance or, in the alternative, for damages for breach of contract.

Service of process upon Daniel Katz was made pursuant to Rule 4(j)(9)b of the North Carolina Rules of Civil Procedure, by mailing a copy of the summons and complaint by registered mail, return receipt requested, addressed to him at 60 Madison Avenue, New York, New York. The registered receipt discloses that the summons and complaint were delivered personally to Mr. Katz on 23 August 1973.

Daniel Katz appeared by counsel and, pursuant to Rule 12 of the North Carolina Rules of Civil Procedure, filed a motion to dismiss the action, or to quash the substituted service of summons, on the grounds that he was a nonresident of North Carolina and had not been properly served with process so as to enable the court to render a personal judgment against him. This motion was denied by the trial court and Daniel Katz appealed to the Court of Appeals. That court found no error and we allowed certiorari to review the decision.

*William J. Waggoner of the firm Waggoner, Hasty & Kratt for defendant appellant.*

*Helms, Mulliss & Johnston by E. Osborne Ayscue, Jr., and C. Marcus Harris for plaintiff appellee.*

HUSKINS, Justice.

After argument of this case in the Court of Appeals, plaintiff filed a motion to amend its complaint by deleting its claim and prayer for specific performance of the contract. That motion was allowed. Moreover, plaintiff states in its brief that the proceedings by Chadbourn against the codefendant Brevard Realty Company, Inc. are not involved in this appeal. Accordingly, this suit now involves only the $135,000.00 damages claimed by plaintiff for breach of contract by defendant Katz.

The sole question posed for decision is whether the trial court acquired personal jurisdiction of Daniel Katz pursuant to G.S. 1-75.4(6)a and Rule 4(j)(9)b of the North Carolina Rules of Civil Procedure.

Defendant contends that the courts of North Carolina may not acquire jurisdiction *in personam* over a nonresident vendee in this manner and argues that our statute and rule of procedure, *as applied,* offend due process of law in violation of the Fourteenth Amendment to the United States Constitution.

*Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877), established three jurisdictional principles as requisites of due process: (1) A personal judgment rendered by a court which has no jurisdiction over a defendant is void; (2) the mere fact that a nonresident defendant owns property in the forum state confers no jurisdiction to render a personal judgment against him; and (3) if a court has no personal jurisdiction over a nonresident defendant, jurisdiction cannot be acquired by publication or merely by serving process upon him outside the forum state. Later decisions of the United States Supreme Court have engrafted modifications upon the *Pennoyer* doctrine, greatly expanding the concept of a state's jurisdiction over nonresident individuals and foreign corporations.

In *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945), the Court said: "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" The thrust of this decision is that traditional notions of fair play and substantial justice are not offended and a nonresident defendant may be subjected to a judgment *in personam* if "certain minimum contacts" of the defendant with the state of the forum are shown. *Accord, Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 96 L.Ed. 485, 72 S.Ct. 413 (1952) ; *Travelers Health Association v. Virginia,* 339 U.S. 643, 94 L.Ed. 1154, 70 S.Ct. 927 (1950).

Jurisdiction over a foreign insurance corporation on the basis of a *single insurance contract* issued to a resident of the forum state was sustained in *McGee v. International Life Insurance Co.,* 355 U.S. 220, 2 L.Ed. 2d 223, 78 S.Ct. 199 (1957). There, discussing the expansion of a state's jurisdiction over nonresidents, the Court said.

"Since *Pennoyer v. Neff* . . . this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding

Chadbourn, Inc. v. Katz

judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. . . . More recently in *International Shoe Co. v. Washington* . . . the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' . . .

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

The above trilogy of United States Supreme Court cases *(Pennoyer v. Neff, supra; International Shoe Co. v. Washington, supra;* and *McGee v. International Life Insurance Co., supra)* illustrate the modern trend in personal jurisdiction away from the strict common law requirements of either establishing a nonresident defendant's consent to jurisdiction or personally serving him while he is within the state's territory. One commentator on the Wisconsin "long-arm" statute, upon which G.S. 1-75.4 is based, describes this direction in state *in personam* jurisdiction as follows:

"The principal modern developments in state judicial jurisdiction over persons (both individual and corporate) have veered sharply away from the grounds of presence and consent, and the new grounds depend importantly upon the relation between the state and the particular litigation sued

· upon. Importance attaches to what, with respect to the action brought, the defendant has caused to be done in the forum state."

Foster, Revision Notes to Wis. Stat. Ann. § 262.05 (1974 Cum. Supp.).

State legislatures have responded to these expanding notions of due process with "long-arm" legislation designed to keep abreast of this jurisdictional trend and to make available to the courts of their states the full jurisdictional powers permissible under due process. Chapter 1, Article 6A of the North Carolina General Statutes reflects this national approach to personal jurisdiction. 1 Phillips, Pocket Part to McIntosh North Carolina Practice and Procedure § 937.5 (1970).

It must be noted, however, that the trend toward expansion of personal jurisdiction of nonresidents does not mean that all restrictions on the personal jurisdiction of state courts have been removed. Unless a nonresident defendant has had "minimum contacts" with the forum state, that state may not exercise jurisdiction over him. Application of the "minimum contacts" rule "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 2 L.Ed. 2d 1283, 78 S.Ct. 1228 (1958). *See also Goldman v. Parkland,* 277 N.C. 223, 176 S.E. 2d 784 (1970); *Byham v. House Corp.,* 265 N.C. 50, 143 S.E. 2d 225 (1965) (lists various factors to be considered in determining if minimal contacts exist); Annotation, Validity, As a Matter of Due Process, of State Statutes or Rules of Court Conferring *In Personam* Jurisdiction over Nonresidents or Foreign Corporations on the Basis of Isolated Business Transaction Within State, 20 A.L.R. 3d 1201 (1968). The existence of minimum contacts, therefore, depends upon the particular facts of each case. *Perkins v. Benguet Consolidated Mining Co., supra; Farmer v. Ferris,* 260 N.C. 619, 133 S.E. 2d 492 (1963).

We now turn to application of these principles to the facts in this case.

[1] G.S. 1-75.4(6), in pertinent part, provides:

*"Personal jurisdiction, grounds for generally.*—A court of this State having jurisdiction of the subject matter has

jurisdiction over a person served in an action pursuant to Rule 4 (j) of the Rules of Civil Procedure under any of the following circumstances:

\*    \*    \*    \*

(6)  Local Property.—In any action which arises out of:

> a. A promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to create in either party an interest in, or protect, acquire, dispose of, use, rent, own, control or possess by either party real property situated in this State . . . . "

This subsection requires three jurisdictional facts: (1) a claim arising out of a bargaining arrangement made with the defendant by or on behalf of the plaintiff; (2) a promise made anywhere which evidences the bargaining arrangement upon which suit is brought; and (3) the subject matter of the arrangement is real property situated in the state. Foster, Revision Notes to Wis. Stat. Ann. § 262.05, supra; Stockton, Jurisdiction and Process, 5 Wake Forest Intra. L. Rev. 46 (1968).

[2]  The contract out of which this action arose quite clearly reveals a promise by Daniel Katz to *acquire* and a promise by plaintiff to *dispose of* real property situated in this State. The complaint is grounded thereon and alleges a tender of the deed and other documents specified in the contract and a failure of defendant to keep his promise. These facts bring this case squarely within the scope of the quoted statute.

We would stop at this point, but defendant contends that G.S. 1-75.4 (6) a *as applied* in this case does not comport with due process requirements. Since due process, and not the language of the statute, is the ultimate test of "long-arm" jurisdiction over a nonresident, we must determine if defendant's contacts with this State are such that "traditional notions of fair play and substantial justice" are offended by maintaining the suit here. *See* 1 Phillips, Pocket Part to McIntosh North Carolina Practice and Procedure § 937.10 at 163 n. 46 (1970).

[3]  The record shows that defendant Katz entered into a contract to purchase real property situated in North Carolina, formed a corporation in this State to receive the title; and thus invoked the benefits and protection of its laws. This suit arises

out of an alleged breach of that contract. North Carolina has a legitimate interest in the protection of its residents in the making of contracts with nonresidents which affect the title to real property within its borders. The courts of this State are open to defendant for protection of his activities and to enforce the valid obligations which Chadbourn, Inc., assumed by reason of the contract. The contract was to be performed in North Carolina and has a substantial connection with the State.

Applying to these facts the law as interpreted by the Supreme Court of the United States, we hold that assumption of *in personam* jurisdiction over defendant by the courts of this State does not offend traditional notions of fair play and substantial justice within the contemplation of the Due Process Clause of the Fourteenth Amendment and that defendant's contacts with the State are sufficient to satisfy due process requirements.

[4] Service of process was made upon defendant at his New York address by registered mail, return receipt requested, in accordance with G.S. 1A-1, Rule 4(j)(9)b, North Carolina Rules of Civil Procedure. The registered receipt discloses that summons and complaint were actually delivered to Daniel Katz personally. Such service by registered mail is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," and therefore, complies with due process requirements. *Travelers Health Association v. Virginia, supra; Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L.Ed. 865, 70 S.Ct. 652 (1950); *see* Louis, Modern Statutory Approaches to Service of Process Outside the State—Comparing the North Carolina Rules of Civil Procedure with the Uniform Interstate and International Procedure Act, 49 N.C.L. Rev. 235 (1971).

For the reasons stated the decision of the Court of Appeals is

Affirmed.

Chief Justice BOBBITT not sitting.