THOMAS A. DILLON III v. NUMISMATIC FUNDING CORPORATION

No. 7518SC949

(Filed 2 June 1976)

1. Process § 14— foreign corporation — in personam jurisdiction
    Neither G.S. 55-144 nor G.S. 55-145 could be the basis for *in personam* jurisdiction over a foreign corporation in an action for breach of contract where the cause of action did not arise out of business transacted by the foreign corporation in North Carolina.

2. Constitutional Law § 24; Process § 14— foreign corporation — in personam jurisdiction — insufficient minimum contacts — due process
    It would be a violation of due process to subject a foreign corporation to the *in personam* jurisdiction of the North Carolina courts in an action for breach of contract where defendant corporation has not engaged in extensive business activities in this State but has made only a few sporadic mail order sales of coins to North Carolina residents and has mailed advertisements to addresses on a rented commercial mailing list which may have contained the names of North Carolinians, and the cause of action arose in South Carolina while

---

Dillon v. Funding Corp.

---

plaintiff was living there and is unrelated to defendant's nominal contacts with North Carolina.

APPEAL by defendant from *Lupton, Judge.* Judgment entered 12 September 1975 in Superior Court, GUILFORD County. Heard in the Court of Appeals 12 March 1976.

Defendant is a New York corporation which sells valuable coins, metals, and securities to investors throughout the country. Plaintiff is presently a resident of North Carolina, but at the time this cause of action arose he was a resident of Greenville, South Carolina. In August 1974, while employed as an investment portfolio manager in Greenville, plaintiff was offered a job as "Institutional Sales Manager," at a potentially higher salary than his current job, by the executive vice-president of defendant (Mr. Corbett). Plaintiff accepted defendant's offer and, in reliance thereon, terminated his job in Greenville, cancelled his lease, and had his personal effects shipped to New York. Shortly before plaintiff left the Greenville area, Mr. Corbett informed plaintiff by phone that the position for which he had been hired was no longer available. The plaintiff proceeded to Greensboro, North Carolina, to stay with his parents and began looking for another job. While in Greensboro plaintiff received a letter dated 28 August 1974 from Mr. Corbett confirming the fact that the job previously offered was no longer available. Plaintiff spent the remainder of the year looking for a job in Greensboro. Finally in January 1975 plaintiff found work as a stockbroker at a salary substantially below his previous salary and the salary he would have earned with defendant. Thereafter plaintiff instituted an action for fraudulent breach of contract against defendant in Superior Court, Guilford County.

Pursuant to G.S. 1A-1, Rule 33, the plaintiff prepared interrogatories to uncover the extent of defendant's business activities in North Carolina during the period 1 January 1970 to 1 April 1975. Defendant's answers to these interrogatories disclose the following pertinent facts: (1) During the five-year period described above, defendant mailed informational and advertising materials to addressees obtained from a commercial mailing list which defendant rented. "Defendant was not permitted to retain a copy of such mailing lists and does not know or have any record of the names of any residents of North Carolina who may have appeared on said mailing lists and may have received the materials." (2) Defendant sold coins to twenty-

seven customers residing in North Carolina during this five-year period by mail order. (3) On one occasion during this period, an employee of defendant visited a North Carolina customer's home to appraise the coin collection of the customer's late husband. (4) In general, "defendant has not submitted proposals for the sale of coins, securities or things of value to customers or prospective customers in N. C.," except for the limited mail solicitation described in (1). Based on this information defendant moved to dismiss the action for lack of *in personam* jurisdiction. The trial court denied this motion and ruled that it was proper to assume *in personam* jurisdiction in this action.

*Dameron, Turner, Enochs & Foster, by James H. Burnley IV, for the plaintiff.*

*Jordan, Wright, Nichols, Caffrey & Hill, by William L. Stocks, for the defendant.*

BROCK, Chief Judge.

The sole question presented by this appeal is whether defendant, a foreign corporation with no office, agents, or regular business activity in North Carolina, is subject to the *in personam* jurisdiction of the North Carolina courts for purposes of a cause of action arising outside North Carolina, brought by a plaintiff who was a resident of another state at the time the action arose, and which is entirely distinct from defendant's nominal contacts with North Carolina.

[1]    First, defendant contends that the plaintiff lacks adequate statutory authority upon which to base *in personam* jurisdiction. Apparently plaintiff relied upon several alternative statutory grounds for *in personam* jurisdiction: G.S. 55-144, G.S. 55-145, G.S. 1-75.4(3), and G.S. 1-75.4(1). General Statute 55-144 authorizes substituted service upon the Secretary of State in actions against foreign corporations transacting business within the State, provided the cause of action arises out of the business transacted in the State. This statute "provides no jurisdiction . . . for foreign transitory causes of action." *R. R. v. Hunt & Sons, Inc.*, 260 N.C. 717, 133 S.E. 2d 644 (1963). It is clear that the cause of action for breach of contract arose at the time defendant notified plaintiff by phone in Greenville, South Carolina, that the job previously offered to plaintiff was no longer available. A cause of action for breach of contract arises at the time the breach occurs. *See* 5 Strong, N. C. Index, Limita-

tion of Actions, § 4, p. 235. In this case the breach occurred in South Carolina. Thus, due to the fact that plaintiff's cause of action did not arise out of business transacted by defendant in North Carolina, G.S. 55-144 does not apply.

General Statute 55-145 confers *in personam* jurisdiction over foreign corporations not transacting business in North Carolina, in special instances. Like G.S. 55-144, this statute only applies to actions arising in North Carolina. *Rendering Corp. v. Engineering Corp.*, 10 N.C. App. 39, 177 S.E. 2d 907 (1970). Since plaintiff's cause of action arose outside of North Carolina, G.S. 55-145 is inapplicable.

Alternatively plaintiff posits G.S. 1-75.4(1) as an appropriate statutory basis for *in personam* jurisdiction in this case.

General Statute 1-75.4(1) is entitled "Local Presence or Status." General Statute 1-75.4(1)(d) grants *in personam* jurisdiction "in any action whether the claim arises within or without this State, in which a claim is asserted against a party who . . . *is engaged in substantial activity* within this State. . . . " (Emphasis added.) Defendant argues that its business activities within the State during the past six years do not approach the magnitude of "substantial activity" as defined by G.S. 1-75.4(1)(d). In our opinion it would serve no useful purpose to decide this case on the basis of whether defendant's activities amount to "substantial activity" within the meaning of G.S. 1-75.4(1)(d). Due process and not the language of G.S. 1-75.4(1)(d) is the ultimate test of North Carolina's "long-arm" jurisdiction over a nonresident, *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E. 2d 676 (1974); and it is generally accepted that North Carolina's long-arm statute (G.S. 1-75.4) should be liberally construed in favor of finding personal jurisdiction, subject of course to due process limitations. *See Trust Co. v. McDaniel*, 18 N.C. App. 644, 197 S.E. 2d 556 (1973). Thus we are reluctant to define and apply the meaning of "substantial activity" in G.S. 1-75.4(1)(d) apart from considerations of due process.

Defendant contends that the trial court's findings of *in personam* jurisdiction in this action constitutes a violation of its rights to due process. We agree.

The test for determining whether the assertion of *in personam* jurisdiction over a nonresident defendant satisfies due

Dillon v. Funding Corp.

process is well-known: "due process requires only that in order to subject a defendant to judgment *in personam,* if he be not present within the territory òf the forum, he have *certain minimum contacts* with it such that the maintenance of the suit does not offend 'the traditional notions of fair play and substantial justice.' " (Emphasis added.) *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945). "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. . . . But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations *arise out of* or are *connected with* the activities *within the state,* a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. (Citations omitted.)" (Emphasis added.) *International Shoe Co. v. Washington, Id.* The underlying concern of the "minimum contacts" test is fairness: "The essence of the issue here, at the constitutional level, is . . . one of fairness to the corporation. Appropriate tests for that are discussed in *International Shoe Co. v. Washington, supra.* . . . The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." *Perkins v. Benguet Consol. Min. Co.,* 342 U.S. 437, 96 L.Ed. 485, 72 S.Ct. 413 (1952).

[2] The distinguishing facts of this case can be summarized as follows: (1) The defendant has not engaged in extensive business activities in North Carolina; rather, it has made a few sporadic mail order sales of coins to North Carolina residents; the number of North Carolina residents who received defendant's mail advertising is not evident in the record, but the fact that defendant rented a special mailing list suggests that the number was relatively small. (2) The cause of action arose in South Carolina while plaintiff was living there; it is totally unrelated to defendant's nominal contacts with North Carolina;

the only apparent reason plaintiff brought this action in North Carolina was that he had moved to this State since the cause of action arose in South Carolina; the preliminary negotiations, the execution of the contract, and the performance required by the contract had no relation to North Carolina or defendant's nominal activities in North Carolina. (3) Plaintiff was not a resident of North Carolina at the time the cause of action arose. In short, defendant's contacts with North Carolina are casual and sporadic at best, and plaintiff's cause of action against defendant bears no relation to defendant's limited activities in the State. In view of these circumstances it would violate due process to subject defendant to the *in personam* jurisdiction of our courts for this particular cause of action.

Plaintiff's reliance upon *McGee v. International Life Ins. Co.*, 355 U.S. 220, 2 L.Ed. 2d 223, 78 S.Ct. 199 (1957), and *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F. 2d 374 (1968), is misguided.

These cases are similar to the one before us only in the paucity of the defendant's contacts with the forum state; however, the cause of action in each of the cited cases was a direct and foreseeable outgrowth of defendant's contact(s) with the forum state. Thus in both cases it was sufficient for purposes of due process that the suit was based on a contract which had substantial connection with the forum state. There is no such substantial connection between the contract or its breach and this State in the case before us. In its dealings with the plaintiff the defendant corporation in no way invoked the protection of North Carolina laws or voluntarily exposed itself to legal proceedings in this State.

In addition plaintiff relies on *Perkins v. Benguet Consol. Min. Co., supra.* Plaintiff in that case was not a resident of the state in which the suit was brought (Ohio), and defendant was a Philippine corporation; moreover, the cause of action did not arise from defendant's contacts or business activities within the forum state. But the defendant's activities in the forum state were substantial: the president, general manager, and principal stockholder of the corporation was a resident of Ohio at the time suit was instituted; from an office in his home he carried on continuous and systematic supervision and direction of the corporation's activities; he used local banks for carrying company funds and as transfer agents of its stock, conducted several

directors' meetings at the office in his home, and kept important files of the company there. Recognizing that there are instances in which the continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities, the Supreme Court concluded that the assertion of *in personam* jurisdiction over the defendant corporation would not offend due process. Obviously the defendant's contacts with North Carolina in the case before us do not approach the degree or quality of those manifest in the *Perkins* case. In essence, it would be grossly unfair to subject the defendant to the *in personam* jurisdiction of our courts in view of its limited activities within North Carolina and the absence of any connection between these activities and plaintiff's claim. Defendant's contacts with North Carolina are insufficient to satisfy due process with respect to plaintiff's cause of action against defendant.

The order of the trial court finding *in personam* jurisdiction over defendant is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Judges VAUGHN and MARTIN concur.