THOMAS A. DILLON III v. NUMISMATIC FUNDING CORPORATION

No. 139

(Filed 31 January 1977)

1. Constitutional Law § 24; Process § 14— foreign corporation — in personam jurisdiction — requirements

     The test to determine if a corporation may be subjected to *in personam* jurisdiction in a foreign forum depends upon whether maintenance of the suit in the forum offends traditional notions of fair play and substantial justice.

2. Constitutional Law § 24; Process § 14— foreign corporation — in personam jurisdiction — sufficient minimum contacts — due process

     Where defendant, a foreign corporation, actively solicited orders for its coins from residents of N. C. on a regular basis during a period of approximately 21 months, made several mass mailings to residents of N. C., sold coins to 27 different citizens in 142 separate transactions, and sent a representative to appraise a private coin collection in N. C. and thereafter sold the collector coins valued at more than $21,000, the assumption of *in personam* jurisdiction over defendant by the courts of N. C. does not offend traditional notions of fair play and substantial justice within the contemplation of the Due Process Clause of the Fourteenth Amendment of the U. S. Constitution, and defendant's contacts with the State are sufficient to satisfy due process requirements.

ON petition for discretionary review of the decision of the Court of Appeals, reported in 29 N.C. App. 513, 225 S.E. 2d 137, which reversed the order entered by *Lupton, J.,* on 12 September 1975 in GUILFORD Superior Court.

     Plaintiff alleges that during 1974 he was a resident of Greenville, South Carolina, and employed as an investment portfolio manager. During early August 1974 defendant, through its executive vice president, offered plaintiff a position with defendant in New York, commencing 1 September 1974. Relying upon this offer, plaintiff terminated his employment in Greenville, South Carolina, gave up his apartment, packed his belongings, and prepared to move to New York. Just prior to his departure, defendant notified plaintiff that the position which had been offered to him was no longer available. Plaintiff then moved to his parent's home in Greensboro, North Carolina, and attempted to secure suitable employment. After searching for approximately five months, he was successful in obtaining employment. However, his new position was at a smaller salary than his prior employment in Greenville.

On 25 February 1975, plaintiff brought this action in Guilford County, North Carolina, for damages arising from defendant's breach of the alleged employment agreement and for punitive damages due to certain fraudulent misrepresentations made by defendant's officers. Defendant did not answer, but filed a motion to dismiss under Rule 12(b) of the North Carolina Rules of Civil Procedure. The basis for the motion was, *inter alia*, that defendant had not had sufficient contacts with North Carolina to confer jurisdiction upon her courts. Judge Lupton held otherwise and denied defendant's motion to dismiss. The Court of Appeals reversed. We granted plaintiff's petition for discretionary review.

*Turner, Enochs, Foster & Burnley by James H. Burnley IV for plaintiff appellant.*

*Jordan, Wright, Nichols, Caffrey & Hill by William L. Stocks for defendant appellee.*

MOORE, Justice.

The sole issue posed for decision is whether the trial court acquired *in personam* jurisdiction of defendant pursuant to G.S. 1-75.4. The resolution of this question involves a two-fold determination. First, do the statutes of North Carolina permit the courts of this jurisdiction to entertain this action against defendant. If so, does the exercise of this power by the North Carolina courts violate due process of law. *See Pulson v. American Rolling Mill Co.,* 170 F. 2d 193 (1st Cir. 1948).

G.S. 1-75.4(1) confers jurisdiction upon a court in this State having subject matter jurisdiction in the following instances:

"(1) Local Presence or Status.—In any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party:

a. Is a natural person present within this State; or

b. Is a natural person domiciled within this State; or

c. Is a domestic corporation; or

d. *Is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise."* (Emphasis added.)

G.S. 1-75.4 is commonly referred to as the "long-arm" statute. In *Chadbourn, Inc. v. Katz,* 285 N.C. 700, 208 S.E. 2d 676 (1974), G.S. 1-75.4(6) was discussed and analyzed in conjunction with the United States Supreme Court cases which formed the constitutional basis for such "long-arm" statutes. In *Chadbourn,* Justice Huskins stated:

> "State legislatures have responded to these expanding notions of due process with 'long-arm' legislation designed to keep abreast of this jurisdictional trend and to make available to the courts of their states the full jurisdictional powers permissible under due process. Chapter 1, Article 6A of the North Carolina General Statutes reflects this national approach to personal jurisdiction. [Citation omitted.]" 285 N.C. at 705, 208 S.E. 2d at 679.

*See also Sparrow v. Goodman,* 376 F. Supp. 1268, 1270 (W.D.N.C. 1974), wherein G.S. 1-75.4(3) was interpreted to be a " 'legislative attempt to assert *in personam* jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution.' "

By the enactment of G.S. 1-75.4(1)(d), it is apparent that the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process. *See* 1 McIntosh, North Carolina Practice and Procedure § 937.5 (Supp. 1970). Thus, we hold that G.S. 1-75.4(1)(d) applies to defendant and, statutorily, grants the courts of North Carolina the opportunity to exercise jurisdiction over defendant to the extent allowed by due process.

The second inquiry is, therefore, whether due process of law would be violated by permitting the courts of this jurisdiction to exercise their power over defendant. The United States Supreme Court cases of *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945); and *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L.Ed. 2d 223, 78 S.Ct. 199 (1957), are frequently cited to illustrate the modern trend in personal jurisdiction away from the strict common law requirements, as stated in *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878), of either establishing a nonresident defendant's consent to jurisdiction in a state or personally serving a defendant while present within the state's territory. We will use these and other cases to guide our decision in the case at bar.

Dillon v. Funding Corp.

In *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 96 L.Ed. 485, 72 S.Ct. 413 (1952), defendant, a Philippine corporation, was sued by a nonresident of Ohio in the Ohio courts. Defendant contended that because it was not an Ohio corporation, the Ohio courts could not, as a matter of law, exercise jurisdiction over defendant based upon a claim arising from its activities outside of Ohio. The Supreme Court held that federal due process did not prohibit Ohio from entertaining the action as a matter of law. Rather, the activity of the foreign corporation in the forum state should be analyzed to determine if such activity was sufficiently substantial and of such a nature as to make it proper that defendant be required to defend the suit. The Court further stated, quoting from *International Shoe Co. v. Washington, supra:*

> " '. . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. . . .' " 342 U.S. at 447, 96 L.Ed. at 493, 72 S.Ct. at 419.

We find a trilogy of Fourth Circuit Court of Appeals decisions illustrative of the requirements of due process under the pertinent United States Supreme Court cases. In *Ralliff v. Cooper Laboratories, Inc.*, 444 F. 2d 745 (4th Cir. 1971), plaintiffs were nonresidents of the forum state—South Carolina. Defendants were two drug companies, one of which had sent occasional mailings into South Carolina; the other had employed several persons to solicit orders in the forum state. It appeared that the claim for relief arose elsewhere than South Carolina and that plaintiffs brought the action in South Carolina to avail themselves of a longer limitations period. The Fourth Circuit held that defendants could not be subjected to *in personam* jurisdiction in South Carolina. The court was of the opinion that in those cases wherein plaintiff was not a resident of the forum state and the claim for relief arose from activities not occurring in the forum state, defendant's contacts with the forum must be "fairly extensive." Within the above stated rule, the court held defendant's activities in the forum were not sufficient and the suit could not be maintained in South Carolina.

Several years later, in *Lee v. Walworth Valve Co.*, 482 F. 2d 297 (4th Cir. 1973), plaintiff was a resident of South Carolina and brought an action for the wrongful death of her

husband due to conduct by defendant (a foreign corporation) occurring outside of South Carolina. The evidence of defendant's "contacts" with the forum state tended to show that it sent salesmen into South Carolina with some degree of regularity; that it occasionally sent engineers into the state to examine special problems; and that it derived revenue from its activities in the forum state. The court held that jurisdiction over defendant was proper and did not deny defendant due process. In reaching this conclusion, the court reasoned that in those cases (such as *Ratliff v. Cooper Laboratories, Inc., supra*) in which the plaintiff is a stranger to the forum state, more "contacts" are required on the part of defendant than in those cases wherein plaintiff is a resident of the forum state and not forum shopping. For when there is a resident plaintiff, the fairness to the plaintiff in permitting the suit to be maintained in his or her home state and not a distant forum is considered in determining the fairness to defendant of being required to defend the suit.

In *O'Neal v. Hicks Brokerage Co.*, 537 F. 2d 1266 (4th Cir. 1976), plaintiffs were residents of South Carolina and were injured in an accident in North Carolina. The evidence showed that defendant Hicks, a corporation, was a cotton broker in Mississippi and had hired the truck, which caused the injury to plaintiff, as an agent for a third party. Defendant Hicks had virtually no contact with South Carolina, except it had occasionally arranged for hauling into the state. The Fourth Circuit again used the test of whether there were sufficient contacts with the forum state to justify jurisdiction and whether it was fair to require defendant to litigate in South Carolina. The court held that Hicks's contacts with South Carolina were so *"de minimus"* that it could not be required to litigate in that state.

[1] From these cases, it appears that the test to determine if a corporation may be subjected to *in personam* jurisdiction in a foreign forum depends upon whether maintenance of the suit in the forum offends " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. at 316, 90 L.Ed. at 102, 66 S.Ct. at 158. In making this determination, the interests of, and fairness to, both the plaintiff and the defendant must be considered and weighed. As stated by Parker, J. (later Chief Justice), in *Farmer v. Ferris*, 260 N.C. 619, 625, 133 S.E. 2d 492, 497 (1963):

"Whether the type of activity conducted within the State is adequate to satisfy the requirements depends upon the facts of the particular case. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445, 96 L.Ed. 485, 492. It seems, according to the most recent decisions of the United States Supreme Court, that the question cannot be answered by applying a mechanical formula or rule of thumb, but by ascertaining what is fair and reasonable and just in the circumstances. In the application of this flexible test, a relevant inquiry is whether defendant engaged in some act or conduct by which it may be said to have invoked the benefits and protections of the law of the forum. *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L.Ed. 2d 1283, 1298; *International Shoe Co. v. Washington, supra,* U.S. p. 319, L.Ed. p. 104."

In instant case, plaintiff is a resident of North Carolina as a result of defendant's alleged breach of contract. There is no hint of forum shopping. Undoubtedly, it would be a large burden upon plaintiff to maintain this action in South Carolina or New York (defendant's principal place of business). In fact, this could possibly preclude plaintiff from asserting his claim.

[2]  Defendant, a corporation, has actively solicited orders for its coins from residents of this State on a regular basis during a period of approximately twenty-one months. During this time, it has made several mass mailings to North Carolinians and has sold coins with a value in excess of $50,000 to some 27 different citizens in 142 separate transactions. In each transaction, defendant employed an invoice which stated: "TITLE TO THE ABOVE MERCHANDISE DOES NOT PASS UNTIL ALL OF THE ABOVE MERCHANDISE IS PAID IN FULL." These invoices ranged from $13.50 up to $9,400 and represented sales in all sections of North Carolina. In addition, defendant sent a representative to visit a resident of Burlington, North Carolina, to appraise her coin collection and thereafter sold her coins valued at more than $21,000. By these acts, it appears that the defendant has "purposefully [availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L.Ed. 2d 1283, 1298, 78 S.Ct. 1228, 1240 (1958).

Applying the law as interpreted by the Supreme Court of the United States to these facts, we hold that assumption of

*in personam* jurisdiction over defendant by the courts of this State does not offend traditional notions of fair play and substantial justice within the contemplation of the Due Process Clause of the Fourteenth Amendment and that defendant's contacts with the State are sufficient to satisfy due process requirements. As was said in *McGee v. International Life Ins. Co., supra,* 355 U.S. at 222-23, 2 L.Ed. 2d at 226, 78 S.Ct. at 201:

> "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

In its brief, defendant does not question the validity of the service of process upon it. Therefore, we do not pass upon that issue. However, *see Travelers Health Assoc. v. Virginia,* 339 U.S. 643, 94 L.Ed. 1154, 70 S.Ct. 927 (1950); *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 94 L.Ed. 865, 70 S.Ct. 652 (1950); *Chadbourn, Inc. v. Katz, supra.*

For the reasons stated herein, we reverse the decision of the Court of Appeals. The case is remanded to the Court of Appeals with directions that it remand to the Superior Court of Guilford County for further proceedings in accordance with this opinion.

Reversed.