LELA CHRISTINE SHEEHY SHERLOCK, PLAINTIFF V.
ROGER THOMAS SHERLOCK, DEFENDANT

No. COA00-356

(Filed 1 May 2001)

**Jurisdiction— personal—long-arm statute—minimum contacts**

The trial court did not err in an action for post-separation support, equitable distribution, attorney fees, alimony, and a restraining order barring defendant from disposing of marital assets, by denying defendant's motion to dismiss based on an alleged lack of personal jurisdiction even though defendant was served with the summons and complaint in Thailand, the parties frequently moved from one foreign country to another, and the parties failed to establish a home anywhere in the United States or abroad, because: (1) the long arm statute, of N.C.G.S. § 1-75.4(12), confers jurisdiction on any action under Chapter 50 that arises out of a marital relationship within North Carolina, notwithstanding subsequent departure from the state, if the other party to the marital relationship continues to reside in this state; (2) the parties were married in North Carolina, plaintiff continues to reside in North Carolina, and this action arises under Chapter 50; (3) defendant has had minimum contacts with this state so as to permit the exercise of personal jurisdiction over him without offense to his due process rights since Durham, North Carolina served as the home of defendant's legal and financial interests throughout his marriage even though he was seldom physically present within the state; and (4) plaintiff's residence in North Carolina is a legitimate factor for consideration although it is not dispositive.

Appeal by defendant from order entered 30 December 1999 by Judge Ann E. McKown in Durham County District Court. Heard in the Court of Appeals 21 February 2001.

*William J. Cotter, for plaintiff-appellee.*

*Moore & Van Allen, PLLC, by Edward L. Embree, III, and Laura Keohane, for defendant-appellant.*

BIGGS, Judge.

Roger Sherlock (defendant) appeals from an order denying his motion to dismiss plaintiff's action pursuant to N.C.R. Civ. P. 12(b)(2),

SHERLOCK v. SHERLOCK

[143 N.C. App. 300 (2001)]

based on lack of personal jurisdiction. We find that the trial court properly concluded that grounds exist to assert personal jurisdiction over the defendant. Accordingly, we affirm the trial court's ruling.

Lela and Roger Sherlock were married in Durham, North Carolina, on 27 December 1983. They separated in June 1999, and on 6 July 1999, Lela Sherlock (plaintiff) instituted the present action, seeking post-separation support, equitable distribution, attorneys' fees, alimony, and a restraining order barring the defendant from disposing of marital assets. The defendant was properly served with the summons and complaint in Bangkok, Thailand, on 26 July 1999. On 23 August 1999, defendant filed a motion to dismiss plaintiff's complaint under Rule 12(b)(2), asserting the absence of personal jurisdiction. His motion was heard on 9 December 1999. The trial court ruled that grounds for jurisdiction were found under N.C.G.S. § 1-75.4(12) (1999), and that the defendant's due process rights were not offended by his being required to defend the suit in North Carolina. The trial court denied defendant's motion to dismiss, and from this ruling defendant appeals.

The denial of a defendant's motion to dismiss for lack of personal jurisdiction, though interlocutory, is immediately appealable. N.C.G.S. § 1-277(b) (1999); *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 293 S.E.2d 182 (1982); *Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854 (2000). The burden is upon the plaintiff to establish by a preponderance of the evidence that personal jurisdiction exists. *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 541 S.E.2d 733 (2 January 2001); *Murphy v. Glafenhein*, 110 N.C. App. 830, 431 S.E.2d 241, *disc. review denied*, 335 N.C. 176, 436 S.E.2d 382 (1993). The court's determination that grounds exist for personal jurisdiction is a question of fact. *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E.2d 676 (1974); *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 519 S.E.2d 317 (1999). Upon review by this Court, the trial court's findings of fact should be upheld if supported by competent evidence. *Hiwassee*, 135 N.C. App. at 24, 519 S.E.2d 317.

When a defendant challenges the court's exercise of personal jurisdiction, the court must undertake a two part inquiry. *Buck v. Heavner*, 93 N.C. App. 142, 377 S.E.2d 75 (1989). The court first determines whether North Carolina law provides a statutory basis for the assertion of personal jurisdiction. *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 541 S.E.2d 733 (2001); *Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854 (2000); *Schofield v. Schofield*, 78 N.C. App.

657, 338 S.E.2d 132 (1986). If the court concludes that there is a statutory basis for jurisdiction, it next must consider whether the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment. *Bates v. Jarrett*, 135 N.C. App. 594, 521 S.E.2d 735 (1999); *Powers v. Parisher*, 104 N.C. App. 400, 409 S.E.2d 725 (1991), *disc. review denied*, 331 N.C. 286, 417 S.E.2d 254 (1992).

In the present case, the trial court found statutory grounds for jurisdiction under N.C.G.S. § 1-75.4 (1999). This statute confers jurisdiction over a wide range of cases, including:

> any action under Chapter 50 that arises out of the marital relationship within this State, notwithstanding subsequent departure from the State, if the other party to the marital relationship continues to reside in this state.

G.S. § 1-75.4(12). We agree with the trial court's conclusion that jurisdiction is proper under this statutory provision. The parties were married in North Carolina. Plaintiff "continues to reside" in North Carolina. The action arises under Chapter 50, "Divorce and Alimony," and seeks resolution solely of issues pertaining to the dissolution of their marriage. Under these circumstances, plaintiff's action is authorized under G.S. § 1-75.4(12). The defendant argues that this action does not "arise out of the marital relationship within this state" because, *e.g.*, the couple never established a permanent home in North Carolina, and the defendant has never owned property within the state. However, these factors do not necessarily render jurisdiction improper. Instead, they are relevant to our evaluation of defendant's connections with this state in regard to the due process implications of the exercise of personal jurisdiction over him.

The requirements for *in personam* jurisdiction were articulated by the United States Supreme Court in *International Shoe Company v. Washington*, 326 U.S. 310, 90 L. Ed. 95 (1945), in which the Court held:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*Id.* at 315, 90 L. Ed. at 102 (citations omitted). *International Shoe* remains the leading authority in this area, and decisions of this Court

have adhered to its principles. The plaintiff in this case sought to exercise jurisdiction over the defendant pursuant to G.S. § 1-75.4, often called the "long arm statute" in reference to its power to compel defense of a suit even by those located at a great distance, provided that the defendant has the requisite "minimum contacts" with North Carolina. This Court has noted that:

> Under our 'long arm' statute, North Carolina courts may obtain personal jurisdiction over a non-resident defendant to the full extent permitted by the Due Process Clause of the United States Constitution.

*Saxon v. Smith*, 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997) (citations omitted). *See also Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977). Therefore, when personal jurisdiction is alleged to exist pursuant to the long-arm statute, "the question of statutory authority collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Hanes Companies, Inc. v. Ronson*, 712 F.Supp. 1223, 1226 (M.D.N.C. 1988) (citations omitted); *Murphy v. Glafenhein*, 110 N.C. App. 830, 431 S.E.2d 241, *disc. review denied*, 335 N.C. 176, 436 S.E.2d 382 (1993).

Thus, the issue before this Court is whether Roger Sherlock has had "minimum contacts" with this State so as to permit the exercise of personal jurisdiction over him without offense to his due process rights. The resolution of this question "will vary with the quality and nature of the defendant's activity, but it is essential . . . that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 705, 208 S.E.2d 676, 679 (1974) (citations omitted). Further, the relationship between defendant and North Carolina must be such that the defendant "should reasonably anticipate being haled into court" in this state. *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986) (citations omitted). As expressed by the United States Supreme Court:

> [the] purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity' of another party or a third person. . . . Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself*[.]

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542 (1985) (citations omitted). This Court recently has summarized the aspects of a defendant's situation that have proven useful in an analysis of "minimum contacts" with a jurisdiction:

> Our courts have developed a list of factors helpful to determining the existence of minimum contacts. Such factors include, (1) the quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience of the parties. . . . The Court must also weigh and consider the interests of and fairness to the parties involved in the litigation.

*Filmar Racing Inc. v. Stewart,* 141 N.C. App. 668, 672, 541 S.E.2d 733, 737 (2001) (citations omitted). *See also Tutterrow v. Leach,* 107 N.C. App. 703, 421 S.E.2d 816 (1992); *Powers v. Parisher,* 104 N.C. App. 400, 409 S.E.2d 725 (1991) (stressing importance of the same factors).

Plaintiff and defendant were married in 1983, and lived together until 1999. They were married in Durham, but did not reside there. The couple never purchased a home or established a permanent residence in this country. In fact, a six month stay in Georgia was the only time during their marriage that they lived in the United States. Nor did they establish a permanent home in any other country. Rather, defendant's employment at all times dictated their place of residence. Roger Sherlock was employed during the marriage by Lucent Technologies and by ATT. These corporations shuttled defendant to various international locales, as need arose. Between 1983 and 1999, the Sherlocks resided in Egypt, Korea, the Philippines, India, Indonesia, Australia, and Thailand. There is no evidence in the record to suggest that either of the Sherlocks intended to become naturalized citizens or permanent residents of any of these countries.

After the Sherlocks married, they managed their concerns using both professional relationships and family connections in Durham. Despite their continuous travel, they administered their important legal, civic, personal, and financial affairs primarily from one location—Durham, North Carolina. The plaintiff's parents and her other relatives live in Durham. North Carolina clearly served as the couple's headquarters in the United States. The trial court in their order found that the defendant either initiated or participated in an array of actions in North Carolina, including the following: (1) their marriage

ceremony was performed in Durham, North Carolina. Consequently, their marriage license was filed there, and the provisions of Chapter 52, "Powers and Liabilities of Married Persons," governed various legal aspects of their relationship during the marriage; (2) while he was overseas, the defendant used his father-in-law's Durham address to receive important mail, including federal income tax documents; (3) between 1983 and 1989 the defendant's salary was directly deposited into a Wachovia bank account in Durham, North Carolina; (4) between 1984 and 1995 the defendant had a North Carolina drivers' license. To obtain a license, the defendant must have had at least a nominal "residence" in North Carolina; (5) in 1984, the defendant executed a Power of Attorney in Durham, and made Albert Sheehy, his father-in-law, his Attorney in Fact. This document was filed in the Durham County Registry; (6) in his capacity as Attorney in Fact, Mr. Sheehy conducted business on behalf of plaintiff and defendant while they were overseas; (7) in 1984, the defendant made a Last Will and Testament, naming Mr. Sheehy, of Durham, the executor of his will, and Mary Meschter, also of Durham, as alternate executor; (8) from 1992 to 1995 the defendant retained Frank Brown, a Durham accountant, to receive and pay bills on his behalf; and (9) in 1992, plaintiff and defendant opened an investment account with Edward D. Jones, Oxford, North Carolina, consisting of IRA accounts, money market funds, and mutual funds.

These findings are supported by competent evidence in the record, and thus should be upheld. We find that the record sufficiently establishes that the defendant "availed himself of the privilege of conducting activities within [North Carolina], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958). We find that the defendant intentionally developed an assortment of financial, legal, and personal connections within North Carolina. These endeavors were sustained over a period of years, and appear intended to inure to his benefit. Defendant's purposeful conduct in this regard clearly separates this case from those in which personal jurisdiction is improper. *See, e.g., Shamley v. Shamley*, 117 N.C. App. 175, 455 S.E.2d 435 (1994) (defendant's only contact with North Carolina consisted of two brief visits); *Tompkins v. Tompkins*, 98 N.C. App. 299, 390 S.E.2d 766 (1990) (no evidence in record that defendant had conducted activities in this state or otherwise invoked the protection of North Carolina's laws); *Schofield v. Schofield*, 78 N.C. App. 657, 338 S.E.2d 132 (1986) (parties did not share matrimonial domicile in North Carolina, and no indication that defendant had conducted business

or other activities here, or had invoked the protection of the State's laws).

Defendant contends that the fact that the plaintiff lives in Durham is irrelevant to our determination regarding personal jurisdiction. Defendant also stresses that he has never lived in North Carolina or purchased real estate here, and attempts to characterize plaintiff's move to North Carolina as the kind of "unilateral act" that precludes the exercise of jurisdiction. We disagree. While the plaintiff's residence is a legitimate factor for our consideration, it is not dispositive. *See Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977) (when plaintiff is resident of forum state, the fairness to plaintiff in permitting suit in her home state is a factor in determination of fairness to defendant of being required to defend the suit in that state). Moreover, the *defendant's* own actions sufficiently demonstrate his connections with this state, regardless of plaintiff's residence.

This Court recognizes that a state does not attain personal jurisdiction over a defendant "simply by being the 'center of gravity' of the controversy or the most convenient location for the trial of the action." *Miller v. Kite*, 313 N.C. 474, 477, 329 S.E.2d 663, 665 (1985) (citations omitted). In the ordinary divorce case, it might be improper to assert jurisdiction over a defendant who has spent so little time in the forum state. However, the Sherlocks' history is unusual; their frequent moves from one foreign country to another, and their failure to establish a permanent home anywhere in the United States or abroad, require this Court to evaluate their situation on its own merits. We note that:

> [T]he criteria by which we mark the boundary line between those activities which justify the subjection of [defendant] to suit, and those which do not, cannot be simply mechanical or quantitative.

*International Shoe Co. v. Washington*, 326 U.S. 310, 319, 90 L. Ed. 95, 103 (1945). This Court, upon review of the facts and circumstances of this case, determines that Durham, North Carolina has served as the home of defendant's legal and financial interests throughout his marriage, even though he was seldom physically present within the state. We find also that North Carolina has an interest in the resolution of the plaintiff's action, and that fairness to the parties supports the plaintiff's assertion of personal jurisdiction. The quantity and quality of defendant's contacts with North Carolina far exceed the "minimum contacts" required for jurisdiction, and thus his right to due process is not offended by this action.

For the reasons stated above, we affirm the trial court's denial of defendant's motion to dismiss.

Affirmed.

Judges WALKER and SMITH concur.