IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-55

No. COA20-687

Filed 1 February 2022

Durham County, No. 19-CVS-1721

ERIC MILLER, Plaintiff,

v.

LG CHEM, LTD., LG CHEM AMERICA, INC., FOGGY BOTTOM VAPES LLC, CHAD & JACLYNN DABBS d/b/a SWEET TEA'S VAPE LOUNGE, DOE DEFENDANTS 1-10, Defendants.

Appeal by plaintiff from an order entered 20 April 2020 by Judge Michael J. O'Foghludha in Durham County Superior Court. Heard in the Court of Appeals 5 October 2021.

*The Paynter Law Firm, PLLC, by Stuart M. Paynter, Celeste H.G. Boyd, David D. Larson, Jr., and Sara Willingham, for plaintiff-appellant.*

*Lewis Brisbois Bisgaard & Smith LLP, by Christopher J. Derrenbacher, for defendants-appellants LG Chem, Ltd., and LG Chem America, Inc.*

*Schwaba Law Firm, by Andrew J. Schwaba, and Cohen, Milstein, Sellers & Toll, PLLC, by Adam Langino, for amicus curiae North Carolina Advocates for Justice.*

*No briefs filed by defendants Foggy Bottom Vapes LLC, Chad & Jaclynn Dabbs d/b/a Sweet Tea's Vape Lounge, and Doe Defendants 1-10.*

TYSON, Judge.

¶ 1        Eric Miller ("Plaintiff") appeals the trial court's decision granting LG Chem,

Ltd.'s ("LG Chem") and LG Chem America, Inc.'s ("LG America") (together, "Defendants") motion to dismiss for lack of personal jurisdiction. We affirm.

## I. Background

Defendant LG Chem is a South Korean company, which manufactures and markets lithium-ion batteries. LG Chem alleges it has no meaningful contacts or connections to North Carolina.

Defendant LG America is a Delaware corporation, which sells and distributes petrochemical products and materials in the United States. Its direct sales and distribution to North Carolina are limited to petrochemical products.

LG Chem became aware in early 2016 that single 18650 lithium-ion cells it had manufactured were being used as unauthorized standalone rechargeable batteries in e-cigarette "vape" pens. LG Chem learned an 18650 battery had caused a fire inside a vape pen user's bag.

LG Chem redesigned the 18650 battery cells to reduce their risk of fire, added warning labels to the batteries in September 2016. It also added a warning to its website cautioning against the unauthorized use of standalone 18650 cells in vape pens. LG Chem then took steps to limit its distributors and corporate customers from selling its manufactured 18650 lithium cells for standalone use in e-cigarette vape devices.

Plaintiff purchased a vape pen and LG Chem 18650 battery cell from

Defendant, Foggy Bottom Vapes, LLC, ("Foggy Bottom") in Bahama, North Carolina in late 2016 or early 2017. On 23 October 2017, Plaintiff purchased a second LG Chem 18650 battery cell for use in his vape pen from Defendants Chad and Jaclynn Dabbs, d/b/a Sweet Tea's Vape Lounge ("Sweet Tea") in Creedmoor, North Carolina. One of the 18650 battery cells allegedly exploded in Plaintiff's pocket, causing severe burns along his left leg on 4 March 2018.

¶ 7        Plaintiff filed suit in January 2019, seeking damages from both LG Defendants under various theories of products liability, ordinary negligence, and breach of the implied warranty of merchantability. The complaint asserts jurisdiction over the LG Defendants based upon the following allegations:

> 10. . . . At all times relevant to this Complaint, LG Chem . . . designed and manufactured 18650-sized cylindrical lithium-ion batteries and caused those batteries to be distributed and sold throughout the United States, including within the State of North Carolina.
>
> 11. . . . At all times relevant to this Complaint, LG [America] did substantial and continuous business in the State of North Carolina by marketing, distributing, and selling or causing to be sold lithium-ion batteries in the State.
>
> . . . .
>
> 17. . . . [O]n information and belief, [LG Chem] engages in substantial activity within this State by placing its lithium-ion batteries into the stream of commerce with the knowledge, understanding, and/or expectation that they will be purchased by consumers in the State. According to

LG Chem. . . . the company "built a network for production, sales and R&D not only within Korea but also in major locations around the globe, conducting business all over the world," with approximately 6% of LG Chem['s] . . . worldwide business in 2015 taking place in the United States. The U.S. District Court for the Western District of North Carolina has found that LG Chem . . . "has knowingly and intentionally used nationwide distribution channels for its products, with the expectation that its products will be sold throughout the country, including in the state of North Carolina."

18. . . . [O]n information and belief, [LG America] engages in substantial activity with this State by causing its lithium-ion batteries to be distributed and sold in the State, and by placing its lithium-ion batteries into the stream of commerce with the knowledge, understanding, and/or expectation that they will be purchased by consumers in the State. The U.S. District Court for the Western District of North Carolina has found that:

> [LG America] has a physical presence in the state of NC in the form of being registered to do business here, having a registered process agent here, using property in this state for storage, and paying state taxes at least once. Additionally, [LG America] has participated in the economic markets of this state through its sales to NC customers.

¶ 8 LG Defendants moved to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure. Plaintiff pursued discovery against LG Defendants, serving both with interrogatories and requests for production of documents. LG Defendants gave limited responses to Plaintiff's interrogatories, but only LG Chem responded to Plaintiff's requests for

production.

¶ 9        Plaintiff filed and served motions to compel LG Defendants to provide more comprehensive responses to his interrogatories and requests for production, and asked the trial court to order additional jurisdictional discovery rather than allow LG Defendants' pending motions to dismiss. Plaintiff then noticed his motions to compel and LG Defendants' motions to dismiss for hearing on 11 March 2020.

¶ 10       The parties submitted evidence to the trial court in advance of the hearing. LG Defendants filed affidavits attesting their 18650 cells were "never designed, manufactured, distributed, advertised, or sold for use by individual consumers as standalone, replaceable, rechargeable batteries in electronic cigarette or vaping devices," nor did they ever "authorize [any distributor, retailer, or re-seller] to sell or distribute any lithium-ion cells for use by individual consumers as standalone, replaceable, rechargeable batteries in electronic cigarette or vaping devices."

¶ 11       Plaintiff filed affidavits tending to show LG Defendants' contacts with North Carolina. The alleged contacts include: (1) the widespread availability of 18650 batteries in vape shops across the State; (2) LG America authorized shipments of 18650 batteries to or through North Carolina; (3) LG Chem marketing materials available online in the State and advertising 18650 batteries; (4) a press release from a North Carolina lithium hydroxide company announcing a deal to supply LG Chem with materials for battery applications; and (5) decisions from other courts rejecting

LG Defendants' personal jurisdiction arguments or compelling additional jurisdictional discovery.

The trial court took the matter under advisement and allowed the parties to submit supplemental affidavits pending resolution of the parties' motions. LG Chem filed a supplemental affidavit concerning its efforts to limit the unauthorized use of 18650 batteries in vaping devices.

The trial court considered the arguments of counsel, the pleadings, briefs, and filings of the parties, including all affidavits and submissions, and entered an order allowing LG Defendants' motions to dismiss on 20 April 2020. The order contains ten findings of fact that LG Chem never designed, manufactured, distributed, advertised, or sold lithium-ion cells "for use by individual consumers as standalone, replaceable, rechargeable batteries in electronic cigarette or vaping devices[.]" The trial court granted LG Defendants' motion to dismiss for lack of personal jurisdiction. Plaintiff appeals.

## II. Jurisdiction

Appellate jurisdiction is proper pursuant to N.C. Gen. Stat. § 1-277(b) (2021).

## III. Issues

Plaintiff argues the trial court erred in holding it lacked personal jurisdiction over the LG Defendants and the trial court abused its discretion in dismissing the case for lack of personal jurisdiction without compelling the LG Defendants to further

respond to discovery requests.

## IV.    Argument

### A.  Jurisdiction

¶ 16        The Supreme Court of the United States recently addressed a similar jurisdictional issue.  Plaintiff's claims against a non-resident defendant "must arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct,* __ U.S. __, __, 209 L. Ed. 2d 225, 234 (2021) (citations omitted).

¶ 17        A defendant's conduct to establish personal jurisdiction is relevant only if it establishes "a connection between the forum and the specific claims at issue." *Id.* at __, 209 L. Ed. 2d at 241 (citation and parentheses omitted).  Under the "arise out of or relate to" standard, "some relationships will support jurisdiction without a causal showing," but "[*t]hat does not mean anything goes.*" *Ford Motor Co.*, __ U.S. at  __, 209 L. Ed. 2d at 236 (emphasis supplied).  "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.*

¶ 18        To establish personal jurisdiction over a non-resident defendant in a product-liability action, the defendant's contact with the forum State must involve the precise product at issue. *Id.* at __, 209 L. Ed. 2d at 238.  The trial court correctly ruled Plaintiff had failed to make the required showing to establish personal jurisdiction

over these non-resident Defendants.

**B. Connection between the Forum and the Specific Claims**

¶ 19        Plaintiff's and our dissenting colleague's argument, analysis, and conclusion show the *"anything goes"* danger Justices Kagan, Alito, and Gorsuch warned of in *Ford:* no "real limits" on unlimited liability in a foreign jurisdiction over a non-resident defendant with no contacts thereto. *Id.* at __, 209 L. Ed. 2d at 236. As is shown here: "The mere fact that [a defendant] was 'connected' to the manufacture and distribution of [a product] is not sufficient to support a conclusion that [the defendant] purposefully availed itself of North Carolina jurisdiction by injecting its products into the stream of commerce." *Cambridge Homes of N. C. Ltd. P'ship. v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 416, 670 S.E.2d 290, 297 (2008). The trial court correctly found and concluded all Plaintiff has shown here was LG Chem manufacturing and "injecting its products into the stream of commerce." *Id.*

¶ 20        The plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.*, __ U.S. at __, 209 L. Ed. 2d at 234 (citations and quotation marks omitted). Conduct is relevant only if it establishes "a connection between the forum and the specific claims at issue." *Id.* at __, 209 L. Ed. 2d at 241 (citation and parentheses omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco*

*Cty.*, __ U.S. __, 198 L. Ed. 2d 395 (2017).

### C. Deliberate, Systematic, and Extensive Market Service

¶ 21    In the absence of a causal connection between a non-resident defendant's contacts with the forum State and the plaintiff's claims, the defendant must "deliberately," "systematically," and "extensively" serve a market in the forum State "for the very [product] that the plaintiffs allege malfunctioned." *Id.* at __, 209 L. Ed. 2d at 237-38.

¶ 22    This Court's recent opinion in *Cohen v. Cont'l Motors, Inc.*, __ N.C. App. __, 2021-NCCOA-449, 864 S.E.2d 816 (2021) is instructive and supports the trial court's conclusion that insufficient jurisdictional contacts occurred in the facts before us.  In *Cohen*, the plaintiffs were killed when their aircraft's starter adapter failed, causing a loss of oil pressure and ultimate failure of the engine. *Id.* ¶ 2, __ N.C. App. at __, 864 S.E.2d at 818.  Continental Motors, Inc. was domiciled in Delaware, but had engaged in nearly 3,000 sales and earned nearly $4 million in revenue from North Carolina consumers.  *Id.* ¶ 6, __ N.C. App. at __, 864 S.E.2d at 819.  Continental Motors provided and maintained a paid electronic subscription account that gave North Carolina-based clients access to its manuals and technical support.  *Id.* ¶ 6, __ N.C. App. at __, 864 S.E.2d at 819.  Continental Motors had worked closely with fourteen North Carolina online maintenance subscribers, including the company which installed the starter adapter into the plaintiff's aircraft. *Id.* ¶ 6, __ N.C. App.

at __, 864 S.E.2d at 819. Although altered by a rebuilder, the starter adapter that failed and was the primary cause of the crash was a component of the defendant's original production. *Id.* ¶ 9, __ N.C. App. at __, 864 S.E.2d at 820.

¶ 23        Unlike Continental Motors, LG Chem is not a United States-based company. LG Chem manufactures and sells lithium-ion batteries which are designed and sold solely to corporate and industrial businesses for inclusion in battery packs used for specified products. The trial court found, and Plaintiff does not challenge, LG Chem does not manufacture, market, sale, nor distribute these batteries for individual or consumer sales or for uses in the vape devices for which they were inserted.

¶ 24        LG Chem does not promote, distribute nor sell these batteries to consumers for use as singular or standalone batteries for individual uses. In discovery, LG Chem showed it "has not sold or distributed . . . 18650 lithium-ion cells to or intended for North Carolina between January 1, 2014 and March 4, 2018." Plaintiff made no showing to refute these assertions.

¶ 25        LG Chem has never maintained an office in North Carolina, has never registered to do business here, and has no property or employees here. In short, LG Chem has no contacts whatsoever with or within North Carolina, other than products it manufactured ending up in North Carolina, solely through the actions of unrelated third-parties of its products for uses LG Chem never intended. Plaintiff does not challenge nor refute these facts.

The other defendant affected and before this Court is LG America, a Delaware corporation that sells and distributes petrochemical products and materials in the United States. Its direct sales and distribution to North Carolina are limited solely to petrochemical products, no batteries or battery components, and it properly maintains a registered agent with the North Carolina Secretary of State for that business.

LG America has never distributed nor sold 18650 cells directly to anyone in the United States or within North Carolina. It has no office, property, or employees in North Carolina. In discovery, LG America asserted:

> [LG America] did not manufacture, design, distribute, or sell the product allegedly in question. [LG America] assisted in the sale of LG 18650 battery cells to B2B Networks, Inc., Cna International, Inc., and Green Battery Technologies LLC in Illinois and Texas from approximately January 2012 to May 2016. [LG America] has never sold or distributed LG 18650 battery cells in, or to anyone in, North Carolina.

### D. N.C. Gen. Stat. § 1-75.4(1)(d)

Plaintiff does not refute these assertions but alleges specific personal jurisdiction over LG Defendants pursuant to N.C. Gen. Stat. § 1-75.4(1)(d) (2021). This statute grants the courts of North Carolina jurisdiction "over defendant[s] to the extent allowed by due process." *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 676, 231 S.E.2d 629, 631 (1977). In the end, this inquiry is a constitutional due

process test, "the question of statutory authority [under N.C. Gen. Stat. § 1-75.4(1)(d)] collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Sherlock v. Sherlock,* 143 N.C. App. 300, 303, 545 S.E.2d 757, 760 (2001) (alterations in original) (citations and quotation marks omitted).

¶ 29        LG Chem and LG America moved to dismiss Plaintiff's complaint for lack of personal jurisdiction and supported their motions with affidavits from an authorized representative, which contradicted the relevant jurisdictional allegations in Plaintiff's complaint.  The trial court granted LG Defendants' motion to dismiss.  The court's decision was based upon affidavits, other supplemental materials, and arguments submitted by both parties.

## V.    Personal Jurisdiction

### A. Standard of Review

¶ 30        "The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record[.]" *Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011) (alterations original) (citations and quotation marks omitted).  "We review *de novo* the issue of whether the trial court's findings of fact support its conclusion of law that the court has personal jurisdiction over a defendant." *Id.* (citation omitted).  "When jurisdiction is challenged, plaintiff has the burden of proving that jurisdiction exists."

*Stetser v. TAP Pharm. Prods. Inc.*, 162 N.C. App. 518, 520, 591 S.E.2d 572, 574 (2004) (citation omitted) (emphasis supplied).

¶ 31        "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.*" Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 542 (1985) (citation omitted).

## B. Stream of Commerce

¶ 32        "The mere fact that [a defendant] was 'connected' to the manufacture and distribution of [a product] is not sufficient to support a conclusion that [the defendant] purposefully availed itself of North Carolina jurisdiction by injecting its products into the stream of commerce." *Cambridge,* 194 N.C. App. at 416, 670 S.E.2d at 297.

¶ 33        Plaintiff's stream of commerce theory cannot displace the fundamental rule that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285, 188 L. Ed. 2d 12, 21 (2014).

¶ 34        In *Ford*, the consumer products at issue were a Ford Explorer and a Ford Crown Victoria, "the very vehicles," not all Ford vehicles. *Ford* __ U.S. at __, 209 L. Ed. 2d at 238.  The Court emphasized that Ford "advertised, sold, and serviced those two car models in both [forum] States for many years." *Ford* __ U.S. at __, 209 L. Ed. 2d at 238.  "In other words, Ford had systematically served a market in Montana and

Minnesota for the very vehicles that the plaintiffs allege malfunctioned." *Ford* __ U.S. at __, 209 L. Ed. 2d at 238.

¶ 35    Here, the product at issue is an 18650 lithium-ion cell, not all models of "lithium-ion batteries generally," or every product that LG Chem manufactures. LG Chem's 18650 lithium-ion cells are not consumer products; they are manufactured, marketed, distributed, and sold solely as industrial component products.

¶ 36    Plaintiff lists purported contacts between LG Chem and North Carolina, but he makes no attempt to demonstrate the necessary connection between these contacts and Plaintiff's claims. Moreover, LG Chem never served as a market in North Carolina for standalone, removable consumer batteries or made "purposeful efforts to flood North Carolina" with standalone consumer batteries. Whereas Ford urged consumers in the forum States to buy the specific products, Explorer and Crown Victoria vehicles, "[b]y every means imaginable[.]" *Id.* at __, 209 L. Ed. 2d at 237. LG Chem never advertised, sold, or distributed any lithium-ion cells to anyone for sale to individual consumers for use as standalone, removable batteries for the devices Plaintiff purchased.

## VI.    Abuse of Discretion

¶ 37    The second issue before this Court is whether the trial court abused its discretion by declining to compel further responses to Plaintiff's discovery requests.

### A. Standard of Review

¶ 38      This Court reviews trial court rulings "on discovery matters under the abuse of discretion standard*." In re J.B.*, 172 N.C. App. 1, 14, 616 S.E.2d 264, 272 (2005). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citation omitted). Plaintiff makes no showing of the trial court's abusing its discretion.

## B. No Jurisdiction

¶ 39      Plaintiff did not allege facts to support assertion of jurisdiction over LG Chem or LG America. Plaintiff's "injecting its products into the stream of commerce" theory of jurisdiction over Defendants violates due process, is contrary to established precedents, and is invalid. *Cambridge*, 194 N.C. App. at 416, 470 S.E.2d at 297. Additional jurisdictional discovery was not warranted.

## VII.      Conclusion

¶ 40      Plaintiff bears the burden of proving jurisdiction. Plaintiff has failed to show any causal connection, purposeful availment or personal jurisdiction between North Carolina and LG Defendants. The trial court's order dismissing Plaintiff's complaints against LG Defendants for lack of specific personal jurisdiction is properly affirmed. *It is so ordered.*

AFFIRMED.

Chief Judge STROUD concurs.

Judge INMAN dissents with separate opinion.

No. COA20-687 – *Miller v. LG Chem.*

INMAN, Judge, dissenting.

Plaintiff, a North Carolinian, bought an LG 18650 battery in North Carolina, was injured by that battery in North Carolina, and has now sued the manufacturer and its American subsidiary—the LG Defendants[1]—in North Carolina. Because, in my view, Plaintiff's complaint contains unrebutted allegations sufficient to establish the LG Defendants' minimum contacts with North Carolina, I respectfully dissent from the majority's decision affirming the dismissal of Plaintiff's complaint at this early stage of litigation.

I also dissent from the majority's holding that the trial court did not abuse its discretion in denying Plaintiff's motion for further discovery. The trial court exercised its discretion on the sole basis that Plaintiff could not show a causal link between his claims and the LG Defendants' contacts with North Carolina. That limited view of specific jurisdiction has been repudiated by the United States Supreme Court. *Ford Motor Co. v. Montana Eighth Judicial District*, ___ U.S. ___, ___, 209 L. Ed. 2d 225, 236 (2021). The Supreme Court's holding in *Ford Motor Co.* is binding on our appellate review of the trial court's order, even though it was entered before *Ford Motor Co.* was decided. I would reverse the trial court's order and remand the matter for further proceedings or, failing that, remand the matter to

___

[1] I refer to both Defendants LG Chem, Ltd. and LG Chem America, Inc. as the "LG Defendants" to avoid confusion with the other named defendants in this case. I otherwise employ the same defined terms set forth in the majority opinion.

the trial court to consider, in its sound discretion, whether jurisdictional discovery is warranted in light of the law of specific jurisdiction as it exists following *Ford Motor Co.*

## I.   FACTUAL AND PROCEDURAL HISTORY

¶ 43        I supplement the majority opinion to describe in further detail the trial court's order dismissing Plaintiff's complaint.   The order contains ten findings of fact collectively establishing: (1) LG Chem has never designed, manufactured, distributed, advertised, or sold lithium-ion cells "for use by individual consumers as standalone, replaceable, rechargeable batteries in electronic cigarette or vaping devices;" (2) "LG Chem has tried to limit the distribution of its 18650 lithium-ion cells for use by consumers as standalone, replaceable, rechargeable batteries in electronic cigarettes and vaping devices" and has never authorized them to be sold or distributed for such use; and (3) LG America's sales in North Carolina "are limited to petrochemical products" and "have no relationship to the distribution of 18650 lithium-ion cells for sale to North Carolina consumers for use in electronic cigarettes and vaping devices."

¶ 44        Based on its findings, the trial court concluded as a matter of law that Plaintiff's injury did not "arise from" the LG Defendants' contacts with North Carolina because the LG Defendants attempted to preclude the distribution and sale of 18650 cells for use by individual consumers in vaping devices and did not serve

that market in the State. The trial court then dismissed Plaintiff's complaint—and by necessary implication denied further jurisdictional discovery—by focusing on causation, without considering whether Plaintiff's claims otherwise related to the LG Defendants' alleged contacts with North Carolina.

## II.   ANALYSIS

### A.  Motion to Dismiss and Specific Jurisdiction

¶ 45          Resolution of this appeal turns in no small part on recent developments in the law of specific jurisdiction and due process. After the trial court entered its order below, the Supreme Court of the United States decided *Ford Motor Co.*, which held that a non-resident defendant's contacts with a state need not be the direct cause of a resident plaintiff's injuries so long as the there is a sufficient "relationship[] [that] will support [specific] jurisdiction without a causal showing." ___ U.S. at ___, 209 L. Ed. 2d at 236.

¶ 46          The North Carolina Supreme Court has since weighed in as well. In *Mucha v. Wagner*, 378 N.C. 167, 2021-NCSC-82, it further clarified what conduct by out-of-state defendants suffices to demonstrate minimum contacts with North Carolina in accordance with due process, and held this State's courts lacked personal jurisdiction over a Connecticut defendant in a domestic violence protection order action when he made phone calls to his ex-girlfriend's cellphone on the day she happened to move from South Carolina to North Carolina.

¶ 47      Applying the constitutional law of specific jurisdiction as it currently stands to the case before us,[2] I would hold that the trial court erred in granting the LG Defendants' motions to dismiss and reverse the order dismissing Plaintiff's claims against them.

## 1. Standard of Review

¶ 48      The standard of review applicable to a trial court's dismissal of an action for lack of personal jurisdiction depends on the procedural posture of the case and the pleadings and evidence before the trial court. *Banc of Am. Sec. LLC v. Evergreen Intern. Aviation, Inc.,* 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). There are generally three ways in which Rule 12(b)(2) motions are brought before our trial courts:

> (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing

---

[2] The LG Defendants did not challenge the applicability of North Carolina's "long-arm" statute, N.C. Gen. Stat. § 1-75.4 (2019), before the trial court or in their briefing to this Court. Because the parties focus on the Due Process Clause of the Fourteenth Amendment, I likewise focus my analysis on that question. *Cohen v. Continental Motors, Inc.*, 2021-NCCOA-449, ¶ 25. And, in any event, Plaintiff alleged personal jurisdiction over the LG Defendants pursuant to N.C. Gen. Stat. § 1-75.4(1)(d), which grants the courts of North Carolina jurisdiction over defendants "to the extent allowed by due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630-31 (1977). Thus, "the question of statutory authority [under N.C. Gen. Stat. § 1-75.4(1)(d)] collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Sherlock v. Sherlock*, 143 N.C. App. 300, 303, 545 S.E.2d 757, 760 (2001) (citation omitted).

the personal jurisdiction issues. *Id.*

¶ 49 If a defendant moves to dismiss without submitting any evidence as to personal jurisdiction, "[t]he trial judge must decide whether the complaint contains allegations that, if take as true, set forth a sufficient basis for the court's exercise of personal jurisdiction." *Id.* Those allegations "must disclose jurisdiction although the particulars of jurisdiction need not be alleged." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217 (2000).

¶ 50 When a defendant supports a motion to dismiss with affidavits, the trial court resolves the motion by considering: (1) allegations in the complaint not controverted by the defendant's affidavit; and (2) facts in the defendant's affidavit not controverted because of the plaintiff's failure to offer evidence. *Banc of Am. Sec.*, 169 N.C. App. at 693-94, 611 S.E.2d at 182-83. Allegations in the complaint that are controverted by evidence are no longer taken as true. *Id.* at 693, 611 S.E.2d at 182. "In such a case, the plaintiff's burden of establishing *prima facie* that grounds for personal jurisdiction exist can still be satisfied if some form of evidence in the record supports the exercise of personal jurisdiction." *Bruggeman*, 138 N.C. App. at 616, 532 S.E.2d at 218 (citation omitted).

¶ 51 If the parties file competing affidavits, as was done here, the trial court "may hear the matter on affidavits presented by the respective parties, . . . or the court may

direct that the matter be heard wholly or partly on oral testimony or depositions." *Banc of Am. Sec.*, 169 N.C. App. at 694, 611 S.E.2d at 183 (quotation marks and citations omitted) (cleaned up). In the absence of an evidentiary hearing, "[t]he trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Id.* (quotation marks and citations omitted) (cleaned up). The burden remains on the plaintiff to make out a *prima facie* case for personal jurisdiction, and "this procedure does not alleviate the plaintiff's ultimate burden of proving personal jurisdiction at an evidentiary hearing or at trial by a preponderance of the evidence." *Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 217 (citations omitted).

¶ 52    When this Court reviews a trial court's ruling on a motion to dismiss for lack of personal jurisdiction, we consider "whether the findings of fact by the trial court are supported by competent evidence on the record." *Lab. Corp. of Am. Holdings v. Caccuro*, 212 N.C. App. 564, 567, 712 S.E.2d 696, 699 (2011) (quotation marks and citations omitted). Unchallenged findings are binding on appeal. *Id.* We review *de novo* whether the trial court's findings support its conclusion as to personal jurisdiction. *Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011).

### 2. *Due Process and Specific Jurisdiction*

¶ 53    The Due Process Clause of the Fourteenth Amendment limits a state court's authority to exercise personal jurisdiction over a defendant. *Mucha*, ¶ 8. Whether

the Due Process Clause permits such an exercise in a given case "requires a forum-by-forum, or sovereign-by-sovereign, analysis." *J. McIntyre Mach, Ltd. v. Nicastro*, 564 U.S. 873, 884, 180 L. Ed. 2d 765, 776 (2011). It is a fact-intensive inquiry that protects "a nonresident defendant['s] . . . liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 302, 838 S.E.2d 158, 162 (2020) (quotation marks and citations omitted).

¶ 54        The broader concept of personal jurisdiction embodied in the Due Process Clause is also divisible into two distinct forms: (1) general jurisdiction, where the defendant "is essentially at home in the State" where the suit is brought and thus subject to suit, *Ford Motor Co.*, ___ U.S. at ___, 209 L. Ed. 2d at 233 (cleaned up) (citations omitted); and (2) specific jurisdiction, which "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.*

¶ 55        Typically, general jurisdiction attaches anywhere a defendant is domiciled, incorporated, or maintains its principal place of business. *Id.* Specific jurisdiction, by contrast, arises only where a defendant, directly or indirectly, "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d. 1283, 1298 (1958) (citing *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 319, 90 L. Ed. 95 (1945)); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297, 62 L. Ed. 2d 490, 501-02 (1980) ("[I]f the sale of a product . . . is not an isolated occurrence, but arises from efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."). The defendant's activities must be intentional, voluntary, "and not random, isolated, or fortuitous." *Ford Motor Co.*, ___ U.S. at ___, 209 L. Ed. 2d at 234 (quotation marks and citation omitted). Examples of such actions include "exploiting a market in the forum state or entering a contractual relationship centered there." *Id.* (cleaned up) (quotation marks and citation omitted). Taken together, the defendant's contacts with the forum must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297, 62 L. Ed. 2d at 501 (citations omitted).

¶ 56       The North Carolina Supreme Court followed this precedent in *Mucha*, explaining that "[a]t a minimum, there must be some evidence from which the court can infer that in undertaking an act, the defendant purposefully established contacts with the State of North Carolina specifically." ¶ 32. The decision in *Mucha* clarified that to support the State's exercise of jurisdiction, a defendant need not know that its purposeful act *will* result in contacts here so long as it *reasonably should know* that it is "establishing a connection with the State of North Carolina." *Id.* ¶ 11. "This

awareness—whether actual *or imputed*—is what permits a court in North Carolina to exercise judicial authority over the nonresident defendant." *Id.* (emphasis added).

¶ 57 Any exercise of specific jurisdiction also turns on the plaintiff's particular claims, which " 'must arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.*, ___ U.S. at ___, 209 L. Ed. 2d at 234 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, ___ U.S. ___, 198 L. Ed. 2d 395, 403 (2017)). This is not a "causation-only approach," as it encompasses both "strict causal relationships between the defendant's in-state activity and the litigation" and "some relationships . . . without a causal showing." *Ford Motor Co.*, ___ U.S. at ___, 209 L. Ed. 2d at 235-36. The latter category of claims, although not requiring causation, is not unconstrained and "incorporates real limits," *id.* at ___, 209 L. Ed. 2d at 236, however unspecific those limits are at present. *See Cohen*, ¶ 48 (Tyson, J., concurring in part and concurring in the result in part) ("The majority's opinion in *Ford* does not articulate any guardrails or outer limits for lower courts to follow when evaluating whether due process concerns prevent a court from establishing specific personal jurisdiction over a non-forum defendant." (citation omitted)).

¶ 58 Wherever those limits actually fall, they must "adequately protect defendants foreign to a forum." *Ford Motor Co.*, ___ U.S. at ___, 209 L. Ed. 2d at 236. Any exercise of specific jurisdiction must "comport with fair play and substantial justice."

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 543 (1985) (quotation marks and citation omitted). Such a determination turns on several factors, including:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 477, 85 L. Ed. 2d at 543 (quotation marks and citation omitted). These fairness concerns "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477, 85 L. Ed. 2d at 544 (citations omitted).

¶ 59        Broadly summarized, any exercise of specific jurisdiction is subject to a three-pronged test under the Due Process Clause, and it attaches when: (1) the out-of-state defendant purposefully avails itself of the privileges and laws of the forum state and thus establishes minimum contacts with the jurisdiction, *Hanson*, 357 U.S. at 253, 2 L. Ed. 2d. at 1298; (2) the plaintiff's claims arise out of or relate to the defendant's minimum contacts with the forum state, *Ford Motor Co.*, ___ U.S. ___, ___, 209 L. Ed. 2d at 234; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476, 85 L. Ed. 2d at 543.

### 3. *Prima Facie Showing of Specific Jurisdiction*

¶ 60      Applying the above principles to this case, and in light of the applicable standard of review, I would hold that Plaintiff has met his burden of establishing a *prima facie* case of specific jurisdiction at this stage of the proceedings. I limit my analysis to whether the LG Defendants purposefully availed themselves of North Carolina's laws and whether Plaintiff's claims arise out of or relate to that purposeful availment—the first two prongs of any specific jurisdiction analysis—as the LG Defendants do not argue that fair play and substantial justice concerns preclude an exercise of jurisdiction under the third prong of the specific jurisdiction test.

### a. *Purposeful Availment and Stream of Commerce*

¶ 61      Plaintiff's complaint alleges that both LG Defendants caused the batteries at issue in this case to be sold in North Carolina. The complaint alleges that LG Chem "caused those batteries to be distributed and sold throughout the United States, including within the State of North Carolina," and that LG Chem did so "with the knowledge, understanding, and/or expectation that they will be purchased by consumers in this State." The complaint contains similar allegations regarding LG America, claiming that it "did substantial and continuous business in the State of North Carolina by marketing, distributing, and selling or causing to be sold lithium-ion batteries in the State," all with the "knowledge, understanding, and/or expectation that they will be purchased by consumers in the State." These factual allegations, which need not contain particulars at this stage of litigation, *Bruggeman*,

138 N.C. App. at 615, 532 S.E.2d at 217, establish that the LG Defendants purposefully caused LG 18650 batteries to be sold to consumers in North Carolina, and thus served a market for the product in the State.

¶ 62      The LG Defendants' discovery responses and affidavits only partially rebut the jurisdictional allegations of Plaintiff's complaint. While LG Chem stated in its discovery responses that it did not sell or distribute 18650 batteries "intended" for North Carolina, LG Chem's subjective intent is not dispositive. *See Mucha*, ¶ 11 (holding that a defendant purposefully avails itself of North Carolina's laws when it "knew or reasonably should have known that by undertaking some action, the defendant was establishing a connection with the State of North Carolina. This awareness—whether actual or imputed—is what permits a court in North Carolina to exercise judicial authority over the nonresident defendant."); *see also J. McIntyre Mach, Ltd.*, 564 U.S. at 883, 180 L. Ed. 2d at 776 ("[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."). Nor does LG America's discovery responses—representing LG America only assisted with sales of 18650 batteries to companies in Texas and Illinois and never itself sold or distributed the batteries in North Carolina—dispense with the issue. *See, e.g., World-Wide Volkswagen*, 444 U.S. at 297, 62 L. Ed. 2d at 501 (acknowledging "indirect" service of a market may establish personal jurisdiction).

¶ 63        So, while LG Chem may not have sold or distributed 18650 batteries directly to North Carolina or "intended" for them to be used in vape pens in the State, one can infer that it nonetheless may have indirectly served a North Carolina market for these batteries when it knowingly "caused those batteries to be distributed and sold . . . within the State of North Carolina," as alleged in Plaintiff's complaint. Similarly, that LG America has not itself sold or distributed to anyone in North Carolina does not mean that LG America, by marketing batteries in North Carolina and assisting with out-of-state transactions, did not knowingly "caus[e] [batteries] to be sold . . . in the State," as the complaint contends, directly or otherwise.

¶ 64        Consistent with the LG Defendants' limited and specific denials, the trial court found that the LG Defendants did not directly distribute or sell 18650 batteries to anyone in North Carolina for use in vaping or e-cigarette devices. Those findings focus strictly on whether the LG Defendants made contact with the State for the specific purpose of selling 18650 batteries to individual consumers for use in vape pens and e-cigarettes. The trial court made no findings as to whether the LG Defendants served, directly or indirectly, other markets for these same batteries in North Carolina. The latter scenario, unrebutted by the LG Defendants' evidence, can be inferred from Plaintiff's jurisdictional allegations. *See Williams v. Institute for Computational Studies at Colorado State University*, 85 N.C. App. 421, 428, 355 S.E.2d 177, 182 (1987) ("The failure to plead the particulars of jurisdiction is not fatal

to the claim so long as the facts alleged permit the inference of jurisdiction."). We must therefore take those allegations as true. *Banc of Am. Sec.*, 169 N.C. App. at 693-94, 611 S.E.2d at 182-83. And, following specific jurisdiction caselaw, these unrebutted allegations are sufficient to establish purposeful availment at this early stage of litigation.

¶ 65 That Plaintiff is not in *the* North Carolina market intended by the LG Defendants does not negate the allegations that they knowingly serve *a* market for batteries here. And knowingly serving *a* market in the forum state is a purposeful availment of that jurisdiction's laws. *See Ford Motor Co.*, ___ U.S. at ___, 209 L. Ed. 2d at 236 ("[T]his Court has stated that specific jurisdiction attaches in cases identical to the ones here—when a company cultivates *a* market for a product in the forum State and the product malfunctions there." (citing *World-Wide Volkswagen*, 444 U.S. 286, 62 L. Ed. 2d 490) (emphasis added)); *see also Walden v. Fiore*, 571 U.S. 277, 285, 188 L. Ed. 2d 12, 20 (2014) ("[W]e have upheld the assertion of jurisdiction over defendants who have purposefully reached out beyond their state and into another by, for example, . . . circulating magazines to 'deliberately exploit' *a* market in the forum State." (cleaned up) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, 79 L. Ed. 2d 790, 801 (1984) (emphasis added))); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2nd Cir. 2010) ("[J]urisdiction is appropriate in New York because Queen Bee has developed and served *a* market for its products there."

(citations omitted) (emphasis added)); *Genetic Implant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (holding a defendant could be sued in Washington in part because "it engaged in a program to develop *a* market in Washington").[3]

¶ 66          Finally, our Supreme Court's recent holding in *Mucha* that the record must support at least an "infer[ence] that in undertaking an act, the defendant purposefully established contacts with the State of North Carolina specifically," ¶ 32, does not compel a different resolution. Plaintiff made an unrebutted allegation in his complaint that LG America specifically marketed lithium-ion batteries in North Carolina. As for LG Chem, the complaint alleges that it "plac[ed] its lithium-ion batteries into the stream of commerce with the knowledge, understanding, and/or expectation that they will be purchased by consumers in the State." Though LG Chem denied that it sold or distributed 18650 batteries to or intended for North Carolina, Plaintiff's allegations encompass indirect service of the North Carolina marketplace through distributors that LG Chem knew, understood, and expected to reach North Carolina. Given: (1) the particulars of these relationships need not be

---

[3] At least one other court has held that specific jurisdiction could be exercised over LG Chem in an 18650 vape-pen products liability suit under this exact rationale despite virtually identical evidence from LG Chem showing it only served a market for sophisticated, industrial consumers who installed the batteries in other manufactured products like power tools. *Tieszen v. EBay, Inc.*, 2021 WL 4134352, *5-*6 (unpublished) (D. S.D. Sept. 10, 2021).

alleged in the complaint, *Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 217; (2) *Mucha*'s acknowledgment that specific jurisdiction attaches when "the defendant knew or reasonably should have known that by undertaking some action, the defendant was establishing a connection with the State of North Carolina," ¶ 11; and (3) uncontroverted evidence that LG Chem's 18650 batteries are readily available for purchase in dozens of vape shops across North Carolina, I am satisfied that the record permits a necessary inference that LG Chem "purposefully established contacts with the State of North Carolina specifically." *Id.* ¶ 32. *See also id.* ¶ 14 (quoting and citing favorably to *Keeton,* 465 U.S. at 781, 79 L. Ed. 2d at 801, which held specific jurisdiction attached to a magazine publisher because the ready availability of the magazine in the forum state evidenced a "continuous[] and deliberate[] exploit[ation]" of the state's market).

### b. *Arising Out of or Relating to*

¶ 67 Whether Plaintiff's claims arise out of or relate to the LG Defendants' contacts with North Carolina also presents a complicated question. As the trial court's order recognizes, the fact that neither of the LG Defendants manufactures, sells, or distributes 18650 batteries for individual use in vaping devices means "Plaintiff's alleged injuries did not arise from any activities of LG Chem . . . [or] from any activities of [LG America]."

¶ 68 Since the trial court's ruling, however, we now have the benefit of *Ford Motor*

*Co.*, which clarified that the "arise out of *or relate to*" standard encompasses two distinct concepts: "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." \_\_\_ U.S. at \_\_\_, 209 L. Ed. 2d at 236. Applying that decision to the record before us, I would hold that Plaintiff has at this time[4] established a *prima facie* showing that his claim "relates to" the LG Defendants' contacts with North Carolina.

¶ 69      United States Supreme Court decisions addressing specific jurisdiction in the products liability context have not generally concerned themselves with how the injured plaintiffs used the products in question or the products' intended consumers or uses. Instead, the Court has focused strictly on the injection of the product itself into the forum's marketplace. The Court in *Ford Motor Co.* altogether omitted intended consumer use in its analysis of the "related to" prong:

> [S]pecific jurisdiction attaches in cases identical to the ones here—*when a company like Ford serves a market for a product in the forum State and the product malfunctions there.* . . . Or said another way, *if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), the Oklahoma's courts could hold the companies accountable for a car's catching fire there*—even though the vehicle had been designed and made overseas and sold in New York.

---

[4] Whether that *prima facie* showing can be maintained after further discovery and at a later stage of this litigation is not a question before us today.

___ U.S. at ___, 209 L. Ed. 2d at 237 (citing *World-Wide Volkswagen*, 444 U.S. at 295, 297, 62 L. Ed. 2d at 501-02) (emphasis added). *Ford* also expressly held that the reason for the injured plaintiff's purchase of a product is not a jurisdictional concern. *See id.* at ___, 209 L. Ed. 2d at 239 ("Nor should jurisdiction in cases like these ride on the exact reasons for an individual plaintiff's purchase, or on his ability to present persuasive evidence about them."). And *Ford Motor Co.* was just the latest of many decisions considering the broader market rather than intended use within a jurisdiction. *See id.* at ___, 209 L . Ed. 2d at 237 (cataloging similar cases).

¶ 70        Holding Plaintiff's injury in this case was "related to" the LG Defendants' contacts with North Carolina as detailed above is consistent with *Ford Motor Co.* Applying the same analysis to the record here, Plaintiff's claim is related to the LG Defendants' North Carolina-focused activities because it alleges: (1) the LG Defendants serve a market for 18650 batteries in North Carolina; (2) Plaintiff purchased such a battery in North Carolina; and (3) the battery Plaintiff purchased in North Carolina malfunctioned, caught fire, and injured Plaintiff in North Carolina. This analysis is also consistent with holdings by other courts that are not binding, but that I find persuasive. In *LG Chem, Ltd. v. Lemmerman*, the Georgia Court of Appeals relied on *Ford Motor Co.* and held that specific jurisdiction existed over the LG Defendants in an 18650 vaping case because LG Chem served a market for the battery in Georgia, and the plaintiff "is a resident of Georgia, used LG Chem's

allegedly defective battery in Georgia, and suffered injuries when that battery allegedly malfunctioned in Georgia." 863 S.E.2d 514, 524 (2021). *See also Tieszen*, 2021 WL 4134352 at *6 (rejecting LG Chem's argument that specific jurisdiction did not attach because it did not serve a market for standalone e-cigarette batteries and holding its contacts with South Dakota related to the plaintiff's claim, "even if he was not LG Chem's intended consumer," because "(1) LG Chem sells and distributes 18650 . . . batteries in South Dakota, (2) [the plaintiff] purchased such a battery online while in South Dakota, and (3) [the plaintiff] was injured by an 18650 . . . battery in South Dakota"). *Cf. Cohen*, ¶ 30 (holding specific jurisdiction attached when the out-of-state defendant served the North Carolina market for airplane Starter Adapters "directly or indirectly" and "its allegedly defective Starter Adapter has there been the source of injury to its owners." (cleaned up) (quotation marks and citation omitted)).

¶ 71        The LG Defendants argue that Plaintiff's claims are not related to their contacts with North Carolina because they never injected 18650 batteries into North Carolina's marketplace for use by individual consumers as standalone batteries for vape pens. But any alleged alteration or misuse of an 18650 battery is a defense on the merits to Plaintiff's products liability suit, not a dispositive factor in the specific jurisdiction analysis. North Carolina's product liability statutes provide:

> No manufacturer or seller of a product shall be held liable
> in any product liability action where a proximate cause of
> the personal injury . . . was either an alteration or

> modification of the product by a part other than the manufacturer or seller . . . . [A]lteration or modification includes changes in the . . . use of the product from that originally designed, tested, or intended by the manufacturer.

N.C. Gen. Stat. § 99B-3 (2019).

¶ 72          Other jurisdictions, both before and after *Ford Motor Co.*, have reached this same conclusion. *See, e.g., Berven v. LG Chem, Ltd.*, 2019 WL 1746083, *11 (E.D. Cal. April 18, 2019) (unpublished), *adopted by Berven v. L.G. Chem, Ltd.*, 2019 WL 4687080 (E.D. Cal. Sept. 26, 2019) (unpublished) (holding that whether use of an 18650 battery by an individual consumer in a vape pen was the result of unintended distribution and misuse went to the merits of a product liability suit, not specific jurisdiction); *LG Chem Am., Inc. v. Morgan*, 2020 WL 7349483, *10 (Tex. App. Ct. Dec. 15, 2020) (unpublished) ("[W]hether LGC's batteries were used in a foreseeable manner or were misused goes to the merits of a products liability action. . . . Jurisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will." (quotation marks and citation omitted)); *Lemmerman*, 863 S.E.2d at 524 ("[W]hether there was an unforeseeable misuse of the product by the injured plaintiff goes to the substantive merits of a products liability action and can be

addressed in that context").[5]  I acknowledge that decisions by courts in other states,

and particularly unpublished decisions, are not controlling authority.  But, given the

developing state of specific jurisdiction caselaw, their analysis applying that law to

products liability suits brought against the LG Defendants for exploding 18650

batteries used in vape pens is a helpful source of reference and persuasive in this

case.

¶ 73        Such a holding does not contravene the "real limits" of the "related to" prong

acknowledged by the United States Supreme Court.  *Ford Motor Co.*, ___ U.S. at ___,

209 L. Ed. 2d at 236.  I would not hold, for example, that Plaintiff may sue LG Chem

here because it sources lithium materials from North Carolina companies, nor would

---

[5] The LG Defendants also cite decisions from other jurisdictions ruling in their favor on specific jurisdiction.  However, those cases were either decided pre-*Ford Motor Co.*, are distinguishable on their facts or law, or both.  For example, several of those decisions found the plaintiffs' allegations failed to specifically allege a causal connection to the plaintiff's claims.  *See, e.g., Schexnider v. E-Cig Central, LLC*, 2020 WL 6929872, *8-*9 (Ct. App. Tx. Texarkana Nov. 25, 2020) (unpublished) (holding Texas lacked specific jurisdiction over LG Chem because: (1) there were no unnegated allegations or evidence that LG Chem indirectly targeted Texas through third-party distributors; and (2) "[t]here was no evidence or unnegated allegations that [plaintiff's] claims arose from LG Chem's only Texas contacts").  Under North Carolina law, however, a plaintiff's allegations of jurisdiction need not contain such particulars at the 12(b)(2) stage, *Bruggeman,* 138 N.C. App. at 615, 532 S.E.2d at 217, and *Ford Motor Co.* makes clear that claims may be brought through specific jurisdiction if they *either* arise out of *or* relate to the plaintiff's claims.  *Ford Motor Co.*, ___ U.S. ___, ___, 209 L. Ed. 2d at 236.  Other decisions cited by the LG Defendants are distinguishable on their facts.  *See, e.g., Davis v. LG Chem, Ltd.*, 849 Fed.Appx. 855, 857-58 (11th Cir. 2021) (unpublished) (holding Oklahoma plaintiffs who purchased 18650 batteries in Oklahoma that exploded in Oklahoma could not sue LG Chem in Georgia simply because LG America is based there).

I hold that LG America may be sued for the injuries alleged because it sells and markets petrochemical products in the State. Neither of those contacts involves the injection of an 18650 battery into the North Carolina marketplace and injury to a North Carolinian from that product. Nor would my holding permit a South Carolina resident, injured in that state by an 18650 battery sold there, to bring suit in North Carolina's courts, as the South Carolina plaintiff's injury would not be related to the LG Defendants' contacts with North Carolina. Indeed, such an out-of-state plaintiff would run up against the same "real limit" imposed in *Bristol-Myers Squibb*, in which the United States Supreme Court held that residents of California injured in that state could bring products liability claims against a non-resident defendant consistent with specific jurisdiction principles, but non-California plaintiffs suing for identical injuries suffered outside the state were barred from pursuing any claims there. ___ U.S. at ___, 198 L. Ed. 2d at 14-16.

¶ 74         I also note that such a holding would not be the final word on this issue in this case. The LG Defendants could ultimately introduce sufficient evidence showing that they have not maintained minimum contacts with North Carolina relating to Plaintiff's claims as the matter proceeds to trial. *See Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 217 (observing that denial of a motion to dismiss for lack of personal jurisdiction based on affidavits "does not alleviate the plaintiff's ultimate burden of proving personal jurisdiction at an evidentiary hearing or at trial by a

preponderance of the evidence" (citations omitted)). I, however, cannot reach that conclusion based on the caselaw, our standard of review, and the record before us at this early stage of litigation.

**B. Denial of Discovery**

¶ 75        I also dissent from the majority's determination that the trial court did not abuse its discretion by denying Plaintiff's motion to compel additional jurisdictional discovery. To be sure, whether to grant such a motion lies in the sound discretion of the trial court. *Sessions v. Sloane*, 248 N.C. App. 370, 381, 789 S.E.2d 844, 853-54 (2016). But a discretionary ruling made under a misapprehension of law amounts to an abuse of discretion. *Orren v. Orren,* 253 N.C. App. 480, 482, 800 S.E.2d 472, 474 (2017). A trial court likewise abuses its discretion when it "is clothed with discretion, but rules as a matter of law, without the exercise of discretion." *Capps v. Lynch*, 253 N.C. 18, 22, 116 S.E.2d 137, 141 (1960). Commission of "[a]n error of law is by definition an abuse of discretion." *Sen Li v. Zhou*, 252 N.C. App. 22, 26, 797 S.E.2d 520, 523 (2017) (citations omitted).

¶ 76        The trial court dismissed the complaint and impliedly denied further jurisdictional discovery based on the legal conclusion that Plaintiff's claims do not "arise out of" the LG Defendants' contacts with North Carolina; that is, Plaintiff could not show a causal link between his claims and the LG Defendants' contacts with the State. But a causal link is not necessary if the claims nonetheless "relate to" a

defendant's contacts with the forum. *Ford Motor Co.*, ___ U.S. at ___, 209 L. Ed. 2d at 236. I note that the trial court did not have the benefit of *Ford Motor Co.* at the time it entered its order. But *Ford Motor Co.* is nonetheless controlling, even in a matter the trial court decided before the Supreme Court's decision.

¶ 77 Because, in my view, Plaintiff has made a *prima facie* showing that the LG Defendants have purposefully availed themselves of North Carolina, I would remand the matter to the trial court to consider whether further jurisdictional discovery is warranted in light of the "related to" standard as defined in *Ford Motor Co. See, e.g., Capps*, 253 N.C. at 22, 116 S.E.2d at 141 ("Where, as here, the court is clothed with discretion, but rules as a matter of law, without the exercise of discretion, the offended party is entitled to have the proposition reconsidered and passed upon as a discretionary matter. . . . [W]here it appears that the judge below has ruled upon the matter before him upon a misapprehension of the law, the cause will be remanded to the Superior Court for further hearing in the true legal light." (quotation marks and citation omitted)).

### III. CONCLUSION

¶ 78 The LG Defendants introduced evidence rebutting allegations that they directly sold or distributed 18650 batteries into North Carolina for individual use as standalone batteries in vaping and e-cigarette devices. But this evidence does not negate the jurisdictional allegations in Plaintiff's complaint, which encompass sales,

marketing, and distribution, both direct *and indirect*, into North Carolina to serve other, non-vaping related markets for 18650 batteries in this State. Those unrebutted jurisdictional allegations and the inferences drawn therefrom establish minimum contacts with North Carolina. Further, Plaintiff's claims "relate to" these contacts, as he is a North Carolina consumer of 18650 batteries who purchased and was injured by such a battery in North Carolina. *See Ford Motor Co.*, ___ U.S. at ___, 209 L. Ed. 2d at 236. I would therefore hold that Plaintiff has met its burden of establishing a *prima facie* case of specific jurisdiction at this stage of the action, reverse the trial court's order to the contrary, and remand for further proceedings not inconsistent with this opinion. Short of that, I would remand the matter back to the trial court to evaluate, in its discretion, whether further jurisdictional discovery is warranted on the issue of whether Plaintiff's claims "relate to" the LG Defendants' contacts with North Carolina. I respectfully dissent.